**In re the MARRIAGE OF Joy Lynn FARR, Appellee,**

**and**

**Larry Allen Farr, Appellant.**

No. 09CA0238.

Colorado Court of Appeals, Div. V.

Feb. 4, 2010.

No Appearance for Appellee.

The Law Office of Dorothy H. Tomasetti, Dorothy H. Tomasetti, Littleton, Colorado, for Appellant.

Opinion by Judge GRAHAM.

Larry Allen Farr (husband) appeals from the judgment declaring his marriage to Joy Lynn Farr (wife) invalid and denying his request for attorney fees. We affirm.

## I. Background

The parties' thirty-year marriage ended in dissolution in 1999. They remarried in 2004, and in 2007, husband filed for dissolution. Wife cross-petitioned to declare the second marriage invalid pursuant to section 14–10–111(1)(d), C.R.S.2009, asserting that she agreed to marry him based upon his representation that he had a terminal illness. A hearing was held, after which the trial court dismissed the petition for dissolution and declared the marriage invalid. Permanent orders regarding property, maintenance, and attorney fees were then entered pursuant to stipulation. Thereafter, husband appealed the order invalidating the marriage, and wife moved to dismiss his appeal as untimely.

## II. Jurisdiction

Wife contends that we lack jurisdiction to consider husband's appeal because the notice of appeal was not filed within forty-five days of entry of the order invalidating the marriage. We disagree.

A notice of appeal must be filed within forty-five days of the date of entry of the judgment, decree, or order from which the party appeals. C.A.R. 4(a). "The timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review." *In re Marriage of Buck*, 60 P.3d 788, 789 (Colo. App.2002).

Generally, an entire case must be decided before any ruling in that case may be appealed. *Cyr v. Dist. Court*, 685 P.2d 769, 770 (Colo.1984). A decree in a dissolution case may be appealed prior to entry of permanent orders only when the trial court certifies the decree as a final appealable order pursuant to C.R.C.P. 54(b). *See Estate of Burford v. Burford*, 935 P.2d 943, 954–55 (Colo.1997); *In re Marriage of Baier*, 39 Colo.App. 34, 36, 561 P.2d 20, 21 (1977); *see also In re Marriage of Salby*, 126 P.3d 291, 295 (Colo.App.2005) (further holding that an order not resolving all issues between the parties cannot be appealed until all final orders are entered).

When a marriage is invalidated pursuant to section 14–10–111(1), C.R.S.2009, the provisions of the dissolution of marriage statutes relating to the entry of permanent orders for property division and maintenance apply in the same manner as if the marriage had been dissolved. *See* § 14–10–111(6), C.R.S.2009; *see also In re Marriage of Blietz*, 538 P.2d 114, 116 (Colo.App.1975) (not published pursuant to C.A.R. 35(f) ).

Here, husband filed his notice of appeal within forty-five days of entry of the permanent orders finally resolving all issues between the parties. The record does not indicate that the court previously certified the decree of invalidity as final pursuant to C.R.C.P. 54(b). Thus, husband's notice of

appeal was timely filed, and we have jurisdiction to determine the issues he raises. *See Salby*, 126 P.3d at 295.

## III. Declaration of Invalidity

Husband contends that the trial court applied the wrong standard of proof in invalidating the parties' marriage and, further, that the court abused its discretion in finding that his representation concerning his illness was fraudulent and in neglecting to determine whether that representation went to the essence of the marriage. We disagree.

### A. Standard of Proof

■ Whether the trial court applied the proper standard of proof is a question of law that we review de novo. *See McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 72 (2009).

■ For all civil actions accruing after July 1, 1972, the burden of proof shall be by a preponderance of the evidence, notwithstanding any contrary provision of law. § 13–25–127(1), (4), C.R.S.2009; *Gerner v. Sullivan*, 768 P.2d 701, 702–03 (Colo.1989). The statute applies despite the existence of prior settled case law establishing a higher burden of proof. *Gerner*, 768 P.2d at 705 (applying preponderance standard in adverse possession case despite case law, which predated the statute, establishing clear and convincing evidence as the standard). Pursuant to the statute, the preponderance of the evidence standard applies when a party seeks to avoid a transaction on equitable grounds alleging fraud, undue influence, or mistake. *See Page v. Clark*, 197 Colo. 306, 319, 592 P.2d 792, 801 (1979).

Here, the trial court's order does not indicate what standard of proof the court applied in granting wife's petition. The court stated, however, that as to the central issue of whether husband deceived wife concerning his illness, it found wife's testimony more credible than husband's. We agree with husband that this suggests that the court applied a preponderance of the evidence standard rather than a clear and convincing evidence standard. *See id.* at 318, 592 P.2d at 800 (proof of a fact by a preponderance of the

evidence means proof that the fact is more probable than not, whereas proof by clear and convincing evidence is proof that the contention is highly probable).

Pursuant to section 13–25–127(1), we reject husband's contention that the trial court erred by not applying a clear and convincing standard of proof. We are not persuaded otherwise by *Young v. Colorado National Bank*, 148 Colo. 104, 125, 365 P.2d 701, 713 (1961), which holds that proof to invalidate a marriage must be clear and convincing because the case predates the enactment of section 13–25–127(1). Thus, we conclude that the trial court did not err in applying a preponderance of the evidence standard when determining wife's petition.

### B. Findings in Support of Invalidity

■ We review for abuse of discretion the trial court's decision to invalidate a marriage. *See Blietz*, 538 P.2d at 116.

As relevant here, a court shall enter a decree declaring a marriage invalid if one party entered into the marriage in reliance on a fraudulent act or representation of the other party when the act or representation goes to the essence of the marriage. *See* § 14–10–111(1)(d).

Here, the trial court recited these statutory requirements and made the following findings: (1) that wife's testimony was more credible than husband's; (2) that wife believed husband's representation that his death was imminent; (3) that wife did not want husband to die alone; (4) that wife relied on husband's representation that he was suffering from myelodysplastic syndrome in deciding to remarry him; and (5) that such representation was fraudulent.

Because these findings are supported by the record, we reject husband's contention that the court abused its discretion in invalidating the parties' marriage. Wife testified that in 2003, before the parties remarried, husband told her that he had a serious illness and that he would die within a few years. Although the medical records husband brought to his meeting with her indicated that his disease had not progressed to a terminal form, wife testified that she was not

familiar with the disease and believed what husband told her about his prognosis. She further testified, as did other witnesses, that she agreed to remarry because husband was dying and she did not want him to die alone.

Wife and the parties' son testified that after the parties remarried, husband did not appear to be ill and that they came to believe he had misled them into believing that he would die soon. Wife further testified that she reviewed husband's recent medical records and that they indicated to her that he was not ill. She also submitted a 2005 insurance application form, which was signed by husband and which indicated that he had no medical problems.

We recognize that there was contrary evidence presented regarding these issues. The evidence as to the nature and progression of husband's disease was particularly conflicting, and no expert testimony was presented. Nonetheless, it is the province of the trial court to determine the credibility of the witnesses and to resolve conflicting evidence. *See M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1384 (Colo.1994); *In re Marriage of Bowles*, 916 P.2d 615, 617 (Colo.App.1995). If the trial court's factual findings have support in the record, an appellate court may not substitute its own findings for those of the trial court. *See M.D.C./Wood, Inc.*, 866 P.2d at 1384. Thus, although the evidence sharply conflicted here and the court could have found, as husband suggests, that he made only an innocent misrepresentation, we may not disturb the court's findings because there is some evidence in the record to support them.

We reject husband's contention that the trial court bypassed the statutory requirement that his misrepresentation go to the essence of the marriage. Our review of the court's findings indicates that it first recognized that it had to find this element, and then found that wife relied on husband's representation in deciding to remarry and that husband made a sufficient fraudulent representation for the court to invalidate the marriage. We conclude that these findings, taken together, are adequate to imply that the court found that the misrepresentation

went to the essence of the marriage, and we discern no basis for remand.

We also reject husband's contention that a misrepresentation about a spouse's prognosis and life expectancy cannot go to the essence of the marriage. Husband cites no case law specifically supporting this contention. Additionally, there was ample evidence that wife decided to remarry him *only* because she believed his death was imminent. Thus, the record supports the finding that, at least as to these parties, the misrepresentation did go to the essence of their remarriage.

## IV. Attorney Fees

Last, husband contends that the trial court abused its discretion by not awarding him attorney fees pursuant to sections 13–17–102 and 14–10–119, C.R.S.2009. We disagree.

The record reflects that after the trial court entered its order invalidating the marriage, the parties reached a stipulation, which was incorporated into the decree, providing in relevant part that the parties would pay their own attorney fees. Having stipulated to pay his own fees in connection with this action, husband cannot now take a position to the contrary. *See Lenich v. Lenich*, 138 Colo. 251, 253, 331 P.2d 498, 499 (1958) ("A litigant who has consented to or acquiesced in a ruling of the trial court is estopped to claim error. . . .").

The judgment is affirmed.

Judge RUSSEL and Judge LICHTENSTEIN concur.